J-S47008-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SAMIR F. ABDUL-AZIZ | : | |
| | : | |
| Appellant | : | No. 285 EDA 2023 |

Appeal from the Judgment of Sentence Entered January 4, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000794-2022

BEFORE:   STABILE, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

DISSENTING MEMORANDUM BY STEVENS, P.J.E.:      **FILED MAY 28, 2024**

Our courts have recognized the harsh reality that "police officers risk their lives daily in the line of duty, especially when conducting a vehicle stop, as they do not know what they will encounter when they approach a car." ***Commonwealth v. Cartagena***, 63 A.3d 294, 306 (Pa.Super. 2013) (citing ***Michigan v. Long****,* 463 U.S. 1032, 1049 (1983) ("roadside encounters between police and suspects are especially hazardous").

As the responding officer who conducted the vehicle stop in this case was presented with circumstances that would lead a reasonable person to believe that Appellant was concealing a weapon in his vehicle, the officer had reasonable suspicion to conduct a limited protective sweep of the vehicle for his own safety.

---

[*] Former Justice specially assigned to the Superior Court.

Moreover, while we respect the privacy rights of individuals, those rights must give way when the safety of police officers is at risk, such as in this case. The Majority recognizes this is a "close" case, and thus, in my view, the balance must tip in favor of officer safety. As the trial court properly denied Appellant's suppression motion, I dissent.

It is well-established that police officers may conduct a limited frisk of a suspect if they have reasonable suspicion that criminal activity is afoot and that the suspect is "armed and dangerous." *Int. of T.W.*, 261 A.3d 409, 417 (Pa. 2021) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). The purpose of a protective frisk is to "dispel a reasonable fear that the stopped suspect possesses a weapon which could be used to harm a police officer or the public during the stop." *Int. of T.W.*, 261 A.3d at 417 (citing *Terry*, 392 U.S. at 30). While it is not necessary for the police officer to be "absolutely certain that the individual is armed," courts employ an objective standard to determine "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Int. of T.W.*, 261 A.3d at 417 (citing *Terry*, 392 U.S. at 27).

An officer conducting a traffic stop may also conduct a protective search of the passenger compartment of a vehicle in certain circumstances:

> [the] protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those

areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. **See Terry**, 392 U.S. at 21, 88 S.Ct. 1868. 'The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' **Id**. at 27, 88 S.Ct. 1868. If a suspect is 'dangerous,' he is no less dangerous simply because he is not arrested.

**Cartagena**, 63 A.3d 294, 298–99 (quoting **Long**, 463 U.S. at 1049–50). (footnote and brackets omitted)).

The applicable legal standard requires this Court to view the facts "not in isolation but in light of the totality of the circumstances when determining whether the police officers [] had reasonable suspicion to have concern for their safety." **Cartagena**, 63 A.3d at 304 (citation omitted).

In this case, the totality of the circumstances justified Officer Sutton's decision to conduct a limited protective sweep of Appellant's vehicle. Officer Sutton pulled Appellant's vehicle over after he had observed Appellant's vehicle dart into an oncoming lane to pass a car in his lane of traffic and then subsequently run a red light at the next intersection. The nighttime vehicle stop occurred at 10:50 p.m. in a high-crime area where shootings and criminal activity often occur. When Officer Sutton exited his patrol car and approached Appellant to investigate further, he noticed that Appellant was nervous, was stuttering, and was repeatedly glancing at a black bag on the front passenger seat of his vehicle.

While Appellant stood at the back of his vehicle with Officer Sutton's partner, Officer Sutton performed a limited vehicle search to pat down the black bag which was in Appellant's reach and felt a metal object that was shaped like a gun. Appellant then admitted that he did not have a license to carry a firearm.

While the majority relies on this Court's decision in *Cartagena*, the factual circumstances of that case can be distinguished from those in the instant case. In *Cartagena*, this Court concluded that an officer lacked reasonable suspicion to conduct a warrantless search of the defendant's vehicle based *solely* on the defendant's nervousness during the nighttime traffic stop of his vehicle that had tinted windows. *Cartagena*, 63 A.3d at 306 ("[w]ithout more, the nervousness of a driver of a vehicle during a late night stop for suspected violation of the tinted window prohibition does not suffice to allow police to conduct a *Terry* frisk and a protective weapons search of a vehicle").

In reaching the decision in *Cartagena*, this Court characterized the "barebones record" as "nothing more than a late night stop of a vehicle suspected of having illegally tinted windows whose driver exhibited nervousness while complying with the officers' orders." *Id.* at 307. The *Cartagena* Court was careful to point out that there was no testimony indicating that the stop occurred in a high-crime area and no indication that the defendant made any movements that caused the officer to believe that the defendant was in possession of a weapon or posed a threat. *Id*. at 302-

303. While the defendant in Cartagena exhibited nervousness, there was no evidence upon which an inference could be made that that the defendant's nervousness resulted from a fear that a weapon could be discovered by police. *Id*. at 305.

In contrast, the roadside encounter in this case presented hazardous circumstances as Officer Sutton initiated a nighttime stop of a vehicle that had been observed swerving into an oncoming lane and running a red light in a high-crime area known for shootings and criminal activity. Where the defendant in **Cartagena** merely exhibited nervousness upon his encounter with the responding officers, Appellant's nervousness and stuttering speech was coupled with his repetitive furtive glances at the black bag on the passenger seat that was large enough to hold a firearm. It was reasonable to infer that Appellant's nervousness was the result of his fear that Officer Sutton would discover that he had a concealed firearm in the bag that was within his reach.

The Majority also cites this Court's decisions in **Commonwealth v. Moyer**, 954 A.2d 659 (Pa.Super. 2008) and **Commonwealth v. Reppert**, 814 A.2d 1196 (Pa.Super. 2002) for the proposition that "furtive movements and nervousness, standing alone, do not support the existence of reasonable suspicion." **Moyer**, 954 A.2d at 670 (citing **Reppert**, 814 A.2d at 1206). However, those cases are inapposite to the instant case as the defendants argued that the responding officers lacked reasonable suspicion to continue the investigatory seizure after the initial valid detention had already

concluded. This Court held that there is "no basis to conclude that excessive nervousness and furtive movements, even considered together, give rise to reasonable suspicion of *criminal activity*" to justify a further investigatory detention.

However, the key issue in this case was not whether Appellant's nervousness and furtive eye glances provided reasonable suspicion for the stop, but instead whether Officer Sutton had reasonable suspicion to conduct a limited protective sweep of Appellant's vehicle for officer safety during a valid investigatory detention. Officer Sutton had not concluded the initial investigatory stop when he conducted the limited protective sweep of Appellant's vehicle while his partner prepared to conduct field sobriety testing with Appellant.

As noted by the majority, an investigatory detention during a vehicle stop "involves a police investigation 'at close range' when the officer remains particularly vulnerable in part *because* a full custodial arrest has not been effected, and the officer must make a 'quick decision as to how to protect himself and others from possible danger.'" **Long***,* 463 U.S. at 1052 (quoting **Terry**, 392 U.S. at 24-28). As such,

> [w]hen the officer has a reasonable belief "that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."

**Long**, 463 U.S. at 1047 (quoting **Terry**, 392 U.S. at 24).

Based on the totality of the circumstances, we agree with the trial court that Officer Sutton was justified in performing a limited protective sweep of Appellant's vehicle while conducting an investigatory detention at night in a high-crime area. Appellant's right to privacy must yield to officer safety as the Commonwealth met its burden to show that that it was reasonable for Officer Sutton to believe that Appellant was dangerous and could gain immediate control of a weapon in his vehicle. **See Cartagena**, **supra**. Accordingly, the trial court did not err in denying Appellant's suppression motion.

For the foregoing reasons, I dissent.