J-S09027-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ARMANDO GONZALEZ | |
| Appellant | No. 1315 MDA 2015 |

Appeal from the Judgment of Sentence July 28, 2015
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0005142-2014

BEFORE:  PANELLA, J., LAZARUS, J., and JENKINS, J.

MEMORANDUM BY LAZARUS, J.:                **FILED MARCH 04, 2016**

Armando Gonzalez appeals from the judgment of sentence entered in the Court of Common Pleas of Berks County after the Honorable Stephen B. Lieberman found him guilty, in a nonjury trial, of possession of a controlled substance.[1]  Upon careful review, we reverse Gonzalez's judgment of sentence.

At approximately 6:15 p.m. on March 21, 2014, City of Reading Police Officer Zachary Martz was on patrol in full uniform with his partner, Officer White, in the 300 block of North Tenth Street when he observed Gonzalez walking on a sidewalk carrying an open container of Coors Light beer.  He stopped his marked patrol vehicle approximately fifteen feet in front of

_____

[1] 35 P.S. § 780-113(a)(16).

Gonzalez, exited, and began speaking with Gonzalez. Gonzalez placed the open container on the front stoop of a residence, after which Officer Martz instructed him to "have a seat." N.T. Suppression Hearing, 1/30/15, at 6. Officer Martz asked Gonzalez for identification, at which time Gonzalez "seemed a little nervous. His hands were a little shaky as he was reaching for his ID." *Id.* at 7. In Officer Martz's experience, this behavior indicated "a possibility that he might be holding some sort of contraband or illegal substance." *Id.* Officer Martz asked Gonzalez if he was in possession of anything illegal. Gonzalez, while avoiding eye contact with Officer Martz, said "no." Because Gonzalez had previously been making eye contact when speaking to Officer Martz, Officer Martz believed that Gonzalez's behavior may have been "deceitful." *Id.* at 7-8. Accordingly, Officer Martz asked Gonzalez again if he had anything illegal on his person and told him "he should be honest with me." *Id.* at 8. Gonzalez admitted he had cocaine in his pocket, which he turned over to Officer Martz. Officer Martz testified that his entire interaction lasted approximately five to seven minutes.

On cross-examination by Gonzalez's counsel, Officer Martz testified that, during his interaction with Gonzalez, a second individual walked up to them. Officer Martz stated that the individual was not cooperative and was behaving in an unpleasant manner. Gonzalez testified that the second individual, his friend, was drunk and "running at the mouth." *Id.* at 18. Gonzalez stated that his friend's disruptive behavior, and not the fact that he

was carrying cocaine, had caused the nervousness observed by Officer Martz. *See id.* at 18-19.[2]

On August 15, 2014, Officer Martz filed a criminal complaint charging Gonzalez with possession of cocaine and consumption of alcohol in public places in violation of a Reading city ordinance. Gonzalez filed a pre-trial motion to suppress all evidence obtained as a result of his detention on March 21, 2014, asserting that Officer Martz lacked either reasonable suspicion or probable cause. Following a hearing and briefing by the parties, the trial court denied Gonzalez's suppression motion by order dated May 29, 2015. Gonzalez proceeded to a nonjury trial on July 28, 2015, at which time the parties incorporated the notes of testimony from the suppression hearing and rested. Judge Lieberman found Gonzalez guilty of possession of a controlled substance.[3] Gonzalez proceeded immediately to sentencing, at which time the court imposed a period of incarceration of six to twelve months, with credit for time served.

Gonzalez did not file postsentence motions. On July 31, 2015, Gonzalez filed a timely notice of appeal to this Court, followed by a court-

_____

[2] Gonzalez testified as follows: "I was nervous, because I'm getting stopped and the beer container and I'm hoping I don't got, you know, what you call it, no warrants for my arrest, knowing that my friend did, and he's drunk and he's running his mouth." N.T. Suppression Hearing, 1/30/15, at 18.

[3] Because the substance contained in the Coors Light can was never admitted into evidence or identified by a laboratory report as alcohol, the court acquitted Gonzalez of the ordinance violation.

ordered statement of errors complained of on appeal pursuant to Pa.R.A.P.

1925(b). Gonzalez raises the following issue for our review:

> Whether Officer Zachary Martz possessed probable cause to detain, question, search and arrest [Gonzalez] following the original lawful interaction for a violation of an open container ordinance?

Brief of Appellant, at [4].

Gonzalez challenges the trial court's denial of his suppression motion.

Our standard of review of the denial of a motion to suppress is well-settled:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Potts*, 73 A.3d 1275, 1280 (Pa. Super. 2013) (citation omitted).

Article I, § 8 of the Pennsylvania Constitution provides that "the people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures[.]" The Fourth Amendment to the

United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]"

Not all interactions between police and citizens involve seizures of persons. *Commonwealth v. Hoak*, 700 A.2d 1263, 1266 (Pa. Super. 1997), citing *Florida v. Bostick*, 501 U.S. 429 (1991) and *Commonwealth v. Matos*, 672 A.2d 769 (Pa. 1996). There is no constitutional prohibition against the police questioning an individual in a public place; indeed, so long as a reasonable person would feel free to go about his or her business, the encounter is consensual and no reasonable suspicion is required. *Hoak*, 700 A.2d at 1266. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* (citations omitted). "Thus, individuals have been seized only if there is an objective reason to believe they are not free to end their conversation with police and proceed on their way." *Id.* (citations omitted). Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, include

> the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Id.*, quoting *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980).

> Valid citizen/police interactions which constitute seizures generally fall within two categories, distinguished according to the degree of restraint upon a citizen's liberty: the investigative detention or *Terry*[4] stop, which subjects an individual to a stop and a period of detention but is not so coercive as to constitute the functional equivalent of an arrest; and a custodial detention or arrest, the more restrictive form of permissible encounters. To maintain constitutional validity, an investigative detention must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion.

*Commonwealth v. Strickler*, 757 A.2d 884, 889 (Pa. 2000) (internal citations omitted).

Here, the trial court concluded that Officer Martz possessed reasonable suspicion to detain Gonzalez because he observed him to be in possession of an open container of alcohol in violation of a city ordinance. Thus, the court concluded, the original detention of Gonzalez was constitutional. We agree with this portion of the court's analysis. However, we do not believe it follows that Officer Martz's subsequent questioning of Gonzalez regarding his possession of contraband, which was unrelated to the purpose of the original stop and led to the discovery of cocaine on his person, also passes constitutional muster.

The fact that Officer Martz witnessed Gonzalez walking on a city street with an open container of beer clearly provided him with reasonable suspicion to detain Gonzalez for the purpose of investigating whether

---

[4] *Terry v. Ohio*, 392 U.S. 1 (1968).

- 6 -

Gonzalez was in violation of the open container ordinance. It did not, however, provide Officer Martz carte blanche to investigate Gonzalez for any and all other possible offenses without reasonable suspicion to believe that additional criminal activity may be occurring.

Officer Martz testified that, after he directed Gonzalez to be seated on the stoop, he requested his identification. At that point, Officer Martz testified, Gonzalez "seemed a little nervous," which, to him, indicated that "he might be holding some sort of contraband or illegal substance" and "arouse[d his] suspicion." N.T. Suppression Hearing, 1/30/15, at 7. Based upon Gonzalez "seem[ing] a little nervous," Officer Martz proceeded to inquire as to whether Gonzalez was in possession of contraband. At this point, Officer Martz diverged from the original investigation for which he possessed reasonable suspicion and, essentially, initiated a second, parallel investigation to determine whether Gonzalez was holding contraband. Because the new line of questioning exceeded the scope of the original stop, the Commonwealth was required to demonstrate reasonable suspicion to support Officer Martz's new line of inquiry. Our review of the record leads us to conclude that Officer Martz did not possess the requisite level of suspicion that contraband-related criminal activity was afoot.

Here, the sole basis for Officer Martz's questioning of Gonzalez regarding his possession of contraband was that he "seemed a little nervous." *Id.* This Court has previously addressed the issue of whether "nervousness" may be used to establish reasonable suspicion as follows:

> In [**Commonwealth v.**] **Sierra**[, 723 A.2d 644 (Pa. 1999)] and
> [**Commonwealth v.**] **DeHart**[, 745 A.2d 633 (Pa. Super.
> 2000)], our Courts pronounced an officer's assessment of
> nervous demeanor palpably insufficient to establish reasonable
> suspicion of a citizen's involvement in criminal activity, even
> when viewed in combination with other indicia of potential
> criminal acts. We have found furtive movements similarly
> deficient even when they occur in high crime environments in
> the late hours of the night. Thus, we find no basis to conclude
> that excessive nervousness and furtive movements, even
> considered together, give rise to reasonable suspicion of criminal
> activity. A police officer's observation of a citizen's nervous
> demeanor and furtive movements, without more, establishes
> nothing more than a "hunch," employing speculation about the
> citizen's motive in the place of fact. Were we to validate such a
> practice, we would open every occupant of a motor vehicle in
> this Commonwealth to law enforcement officers' wholly
> subjective interpretation of inoffensive conduct, and undermine
> our Supreme Court's time-honored insistence that police officers
> may stop our citizens only on the basis of objective criteria. This
> we cannot do. This we will not do.

**Commonwealth v. Reppert**, 814 A.2d 1196, 1206 (Pa. Super. 2002) (internal citations omitted).

Here, while Officer Martz interpreted Gonzalez's nervousness as a sign of wrongdoing or deceit, it is equally likely that Gonzalez's behavior was caused by the disruptive behavior of his friend, or simply by the fact that he had been stopped by a police officer. Without any additional indicia of criminal activity, Officer Martz lacked reasonable suspicion to investigate Gonzalez for anything more than the open carry ordinance violation. Accordingly, the evidence obtained as a result of Officer Martz's illegal interrogation of Gonzalez must be suppressed.

Judgment of sentence reversed. Case remanded for proceedings consistent with the dictates of this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/4/2016