J-A10003-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| AARON PAGAN | : | |
| Appellant | : | No. 2686 EDA 2017 |

Appeal from the Judgment of Sentence August 15, 2017
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0000261-2017

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and RANSOM*, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JUNE 20, 2018**

Appellant, Aaron Pagan, appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas, following his stipulated bench trial convictions for possession of a controlled substance, possession of a controlled substance with the intent to distribute ("PWID"), possession of drug paraphernalia, and no rear lights.[1]  We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises one issue for our review:

> DID THE TRIAL COURT ERR IN DENYING THE MOTION TO SUPPRESS WHERE APPELLANT, FOLLOWING THE CONCLUSION OF A VALID TRAFFIC STOP, WAS SUBJECTED

_____

[1] 35 P.S. § 780-113(a)(16), (30), (32); 75 Pa.C.S.A. § 4303(b), respectively.

_____

*   Retired Senior Judge assigned to the Superior Court.

> TO A SECOND SEIZURE THAT WAS NOT SUPPORTED BY REASONABLE SUSPICION OF CRIMINAL ACTIVITY TO JUSTIFY A CONTINUED INVESTIGATORY DETENTION RENDERING HIS CONSENT TO THE SEARCH OF HIS VEHICLE INVALID, AND THE SUBSEQUENT WARRANTLESS SEARCH WAS NOT SUPPORTED BY PROBABLE CAUSE?

(Appellant's Brief at 5).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Wallace H. Bateman Jr., we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (*See* Trial Court Opinion, filed November 20, 2017, at 3-10) (finding: Appellant concedes initial traffic stop was lawful but argues officer's continued engagement initiated investigatory detention that lacked reasonable suspicion and invalidated Appellant's consent to search; whether interaction transformed from mere encounter to investigatory detention is fact specific; here, officer pulled over Appellant during daytime in parking lot, Appellant remained inside his vehicle for duration of contact and there was no physical police contact, law enforcement did not direct Appellant's movements, officer's demeanor was pleasant, path to leave was unobstructed, Appellant possessed his license and registration, officer stepped away and told Appellant he could leave, indicating break in chain from initial traffic stop, and nature of initial investigatory detention was professional and innocuous such that no coercive undertones translated to re-engagement; fact that officer told Appellant he was free to leave is "potent and objective factor" in analysis;

- 2 -

based on totality of circumstances, reasonable person in same situation would have felt free to leave and to decline officer's request to search; second interaction with Appellant constituted mere encounter, not investigatory detention; moreover, even if second interaction was investigatory detention, Officer Bielecki had reasonable suspicion to re-engage Appellant because of Appellant's presence in high drug-trafficking area, his tinted windows, Appellant's extreme nervousness, presence of air fresheners and laundry detergent (common masking agents for drug mules), and Appellant's inaccurate paperwork; Appellant's consent to search was valid).[2]  Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judge McLaughlin joins this memorandum.

Judge Ransom notes her dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/20/18

---

[2] In **Commonwealth v. Kemp**, 961 A.2d 1247 (Pa.Super. 2008) (*en banc*), this Court held that facts gathered during a valid traffic stop can be used to justify an investigatory detention after an officer has indicated a defendant is free to leave.  Notwithstanding differing viewpoints on the logic of **Kemp**'s holding, we are bound by this precedent.

# IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA  :  CP-09-CR-0000261-2017

:

v.  :

:

AARON PAGAN  :  2686 EDA 2017

:

## OPINION

Defendant Aaron Pagan (hereinafter "Appellant"), appeals this Court's August 15, 2017, Order denying his Motion to Suppress. We file this Opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

### FACTUAL BACKGROUND

On December 9, 2016, the Officer Bielecki observed a broken brake light and dark tinted windows on Appellant's vehicle. N.T. 6/1/17, pp. 9-10. The vehicle was in a known drug trafficking area. Id. at 8-9. These facts resulted in a traffic stop. Id. at 10. Officer Bielecki is a six year veteran of the police force, with experience in the Narcotic Interdiction Unit. Id. at 7. At the time of this stop, Officer Bielecki was assigned to the Special Investigations Unit. Id.

After approaching the vehicle, Officer Bielecki noticed Appellant was nervous, breathing heavy, and his hands were shaking. Id. at 11. The Officer observed air fresheners and a detergent bottle inside Appellant's car. Id. at 11. No odor emanated from the air fresheners as they were in the glove box and no odor emanated from the detergent bottle because the top was screwed on. Id. at 33. Appellant gave the Officer inaccurate car insurance (it was for a newer model Chevrolet than the one Appellant was driving) and the insurance was expired. Id. at 12-13. During this stop, Appellant had an unobstructed path to leave and two (2) police officers were in contact with



Appellant at his vehicle. Id. at 14-15. Officer Bielecki opted not to cite Appellant for the vehicle code and insurance infractions. Id. at 13, 34. The Officer told Appellant if he did not have any questions, he was "good to go." Id. at 15. Appellant did not have any questions for the Officer. N.T. 6/1/17, Exhibit C-2.

After taking three steps away from Appellant's vehicle, the Officer turned around and engaged Appellant. Id. at 16. The Officer chose to continue engaging Appellant after backup arrived. Id. at 30. The Officer asked Appellant what he was doing there, who he was meeting, if there was anything illegal in the car, and if law enforcement may search his vehicle. Appellant consented to a search of his vehicle. Id. at 16.

The search revealed a backpack with the following items consistent with heroin distribution:

> ". . . strainers, blenders that had a brown residue consistent with – that was heroin . . . [n]ew wax packaging, wax bags. Some were pre-stamped. New blue wax bags. There was an ink pad, a new ink blotter, or an ink stamper. There – I believe I said there was blenders. There was new rubber bands. Little, I guess, they're little plastic funnels."

Id. at 17.

## PROCEDURAL HISTORY

On December 9, 2016, Bensalem Township Police Department arrested Appellant. Appellant filed a Motion to Suppress on April 21, 2017. After two continuances, on June 5, 2017, the Court denied Appellant's Motion to Suppress and proceeded to a stipulated bench trial resulting in Appellant's conviction. That same day, Appellant was sentenced to three and a half (3.5) to ten

2

(10) years' incarceration on a charge of Manufacturing with Intent to Distribute, to wit heroin.[1] No further penalty was imposed on the remaining counts.[2]

Appellant filed a Motion for Reconsideration on June 12, 2017. After a hearing, the Court reduced Appellant's sentence to three (3) to ten (10) years' incarceration to be served concurrently with any sentence Appellant now serves. Six (6) days thereafter, Appellant filed a Notice of Appeal to the Superior Court.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

On September 1, 2017, this Court issued an Order pursuant to Pa.R.A.P. § 1925(b) requiring Appellant to file a concise statement of the errors complained of on appeal no later than twenty-one (21) days after entry of the Order. Appellant timely filed such a statement raising the following issues, *verbatim*:

> The trial Court erred in denying defendant's Suppression Motion where the defendant was subjected to a second seizure following the conclusion of a traffic stop that was not supported by reasonable suspicion of criminal activity to justify a continued investigatory detention rendering his "consent" invalid.

## ANALYSIS

Appellate review of a suppression order "is limited to determining whether the record as a whole supports the suppression court's factual findings and whether the legal conclusions drawn from such findings are free of error." Commonwealth v. Wiley, 858 A.2d 1191, 1193 (Pa. Super. 2004).

> Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

---

[1] 35 P.S. § 780-113(a)(30).
[2] Possession of Drug Paraphernalia – 35 P.S. § 780-113(a)(32); Intentional Possession of a Controlled Substance – 35 P.S. § 780-113-(a)(16); and No Rear Light – 75 Pa.C.S.A. § 4303(b).

3

Commonwealth v. Bomar, 826 A.2d 831, 842 (Pa. 2003) (citations omitted).

There are three (3) classifications for interactions between citizens and law enforcement in Fourth Amendment jurisprudence:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

Commonwealth v. Ellis, 662 A.2d 1043, 1047 (Pa. 1995) (citations and footnotes omitted). "To determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the police conducted a seizure of the person involved."

Commonwealth v. Reppert, 814 A.2d 1196, 1201 (Pa. Super. 2002).

> To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter. Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable [person] innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes.

Id. at 1201–02 (citations omitted). The Pennsylvania Supreme Court articulated the following non-exclusive list of factors to consider in assessing how a reasonable person would feel under the totality of the circumstances:

> ... 1) the presence or absence of police excesses; 2) whether there was physical contact; 3) whether police directed the citizen's movements; 4) police demeanor and manner of expression; 5) the location and time of the interdiction; 6) the content of the questions and statements; 7) the existence and character of the initial investigative detention, including its degree of coerciveness; 8) 'the degree to which the transition between the traffic stop/investigative detention and the subsequent encounter can be viewed as seamless, ... thus suggesting to a citizen that his movements may remain subject to police restraint,'; and 9) whether there was

4

an express admonition to the effect that the citizen-subject is free to depart, which 'is a potent, objective factor.'

Commonwealth v. Randolph, 151 A.3d 170, 177 (Pa. Super. 2016) (citations omitted), appeal denied, 168 A.3d 1284 (Pa. 2017).

Appellant conceded that the initial traffic stop was lawful, but argued the Officer's continued engagement initiated an investigatory detention thereby lacking reasonable suspicion and invalidating consent to search the vehicle.[3] See Commonwealth v. Lopez, 609 A.2d 177, 182 (Pa. Super. 1992) (allowing a driver to proceed without further delay after providing a valid license and registration unless law enforcement has "reasonable grounds to suspect an illegal transaction in drugs or other serious crime."). We ruled to the contrary, finding this interaction to be a mere encounter that does not rise to the level of an investigatory detention.

We find that Appellant's consent to search the vehicle occurred in the course of a mere encounter, such that a finding of reasonable suspicion is not necessary. The Commonwealth and Appellant submitted case law for our review. The case law in this area is fact dependent. As such, in researching the instant claim we seek guidance from analogous facts in Pennsylvania's appellate courts, as we did when rendering our decision.

In Commonwealth v. Freeman, 757 A.2d 903 (Pa. Super. 2000) the Court found the defendant's consent to search her vehicle tainted as part of a second investigatory detention without reasonable suspicion. Id. at 905. In this case, law enforcement initiated a traffic stop on the basis of the defendant's improper lane changes and windshield obstructions. Id. The defendant appeared to be traveling with an additional vehicle based on the manner in which they each drove. Id. at 904-05. The Officer issued a written warning to the defendant, returned her license and

---

[3] The first stop was permissible under 75 Pa.C.S.A. § 4303(b). The officer had objectively reasonable grounds to believe there was probable cause for a traffic violation, or at least had reasonable suspicion.

5

registration, and told her she was free to leave. Freeman, 757 A.2d at 905. The Officer returned to the defendant's vehicle to question her further, after confirming an inconsistent statement. Id. Unable to explain the inconsistent statement, the Officer asked the defendant to exit her vehicle, and subsequently sought her consent to search the vehicle. Id. The search revealed marijuana. Id. at 905-06. The Court held the police interactions amounted to two separate investigatory detentions, the latter of which, lacked reasonable suspicion to justify an investigatory detention. Id. at 907, 910.

In a more recent iteration of Freeman, the Commonwealth v. Nguyen, 116 A.3d 657 (Pa. Super. 2015) Court also held the defendant was subjected to a second seizure following the conclusion of an investigatory traffic stop. In Nguyen, the trooper re-engaged the defendant after issuing a warning, in which the driver's profuse apology, record, and nervousness led the trooper to seek consent for a search after telling the defendant he was free to leave. Nguyen, 116 A.3d at 667. The court held the second interaction to be an investigatory detention. Id. The Court further held nervousness and being overly apologetic is insufficient to establish reasonable suspicion to justify a second investigatory detention. Id. at 669. The evidence supporting defendant's conviction of possession with intent to distribute heroin was suppressed, despite defendant's consent, for an unlawful seizure; the judgment of sentence was vacated and remanded for further proceedings. Id.

Reaching a different conclusion than Freeman and Nguyen, the Superior Court in Randolph, 151 A.3d 170 found the defendant's "consent to search his vehicle valid, because the traffic stop had become a mere encounter by the time [the officer] obtained [the defendant's] consent, and because [the defendant's] consent was voluntary." Randolph, 151 A.3d at 176. In Randolph, the officer initiated a traffic stop of the defendant and after issuing a written warning

6

for illegally tinted windows, the officer told the defendant he was free to leave. Randolph, 151 A.3d at 176 Moments later, the officer asked the defendant for permission to ask him additional questions about his trip. Id. After receiving an inconsistent story with some odd features from the defendant, the officer obtained consent to search the vehicle from the defendant. Id. The Court held the consent to search was valid as obtained in the course of a mere encounter but ultimately suppressed the narcotics removed from a hidden compartment welded to the undercarriage for a defective search warrant. Id. at 178, 184.

Before rendering a decision, the Randolph Court engaged in a thorough review of Commonwealth v. Strickler, 757 A.2d 884 (Pa. 2000). In Strickler, the defendant was stopped on the side of the road urinating. Strickler, 757 A.2d at 886. The defendant told the officer they were on the way home from the Williams Grove Speedway. Id. The officer saw a cooler containing unopened beers Id. After returning the defendant's license and registration, the officer walked toward his cruiser, stopped, turned around and re-engaged the defendant. Id. at 887. The defendant gave the officer consent to search his vehicle. Id. The search revealed a marijuana smoking pipe and the defendant was charged with possession of drug paraphernalia. Id. The Strickler Court held a mere encounter, between a police officer and a citizen may follow the conclusion of a traffic stop, thereby not requiring an additional finding of reasonable suspicion. Strickler, 757 A.2d at 897, 901-02.

Despite a plethora of case law available to inform a decision, determining the exact moment where a mere encounter elevates to an investigatory detention remains elusory. As seen above, a number of cases discuss the consequence of a police officer purposefully re-engaging a defendant after they are told they may leave. E.g. Nguyen, 116 A.3d 657; cf. Randolph, 151 A.3d 170. We recognize telling a defendant they are "free to leave" does not vitiate any additional custodial

7

interrogation absent probable cause. Commonwealth v. Moyer, 954 A.2d 659, 665 (Pa. Super. 2008). But an officer telling someone they're free to leave is "a potent and objective factor" in determining whether a reasonable person would feel seized. Strickler, 757 A.2d at 889. Based on the totality of the circumstances in the instant case, a reasonable person in the same situation would have felt free to leave and decline the Officer's request to search: Appellant was pulled over in the daytime in a parking lot; Appellant remained inside his vehicle the entire time; there was no physical police contact; law enforcement never directed Appellant's movements; the Officer's demeanor was pleasant; the path to leave was unobstructed; Appellant possessed his driver's license and registration; the Officer stepped away from Appellant's vehicle and told Appellant he may leave thereby indicating a break in detention from the initial traffic stop; and the nature of the initial investigatory detention was professional and innocuous such that no coercive undertones translated to the mere encounter. Officer Bieleki's choice to re-engage Appellant in the manner that he did was a tactical decision, not dispositive in determining whether Appellant felt free to go. We note in cases like Nguyen, defendants are removed from their vehicle when officers inform them of their right to freely leave. We find that fact critical in determining whether a person already feels seized and under the authority of law enforcement. The instant facts taken in their totality do not amount to an investigatory detention, therefore no reasonable suspicion was necessary to ask Appellant for consent to search his vehicle, and the contents of the search should not be suppressed.

Alternatively, we find enough reasonable suspicion for Officer Bielecki to re-engage Appellant.

To show reasonable suspicion exists, "a police officer must be able to point to "specific and articulable facts" leading him to suspect criminal activity is afoot." Brown, 996 A.2d 473, 477 (Pa. 2010); see Commonwealth v. Melendez, 676 A.2d 226, 228 (Pa. 1996) (citing Terry v. Ohio,

8

392 U.S. 1, 21 (1968)). Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless seizure, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. Commonwealth v. Brown, 996 A.2d 473, 477 (Pa. 2010) (citations and quotation marks omitted). In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention. Commonwealth v. Cook, 735 A.2d 673, 676 (Pa. 1999) (citations omitted). "Reasonable suspicion sufficient to stop a motorist must be viewed from the standpoint of an objectively reasonable police officer." (Commonwealth v. Chase, 960 A.2d 108, 120 (Pa. 2008) (citing Ornelas v. United States, 517 U.S. 690, 696 (1996)).

The following factors, when considered in their totality, amount to reasonable suspicion that criminal activity is afoot in the instant case: (1) Appellant's presence in a high drug-trafficking area; (2) tinted windows; (3) Appellant's extreme nervousness exhibited through physical manifestations; (4) the presence air fresheners and laundry detergent, a common masking agent for drug mules; and (5) inaccurate paperwork. Nervousness alone does not establish reasonable suspicion, but is a relevant factor in considering the totality of the circumstances. Commonwealth v. Gray, 896 A.2d 601, 606 n. 7 (Pa. Super. 2006); see Commonwealth v. Rogers, 849 A.2d 1185, 1187-88. (Pa. Super. 2004) (holding nervousness, open powdered detergent and fabric softener dryer sheets, a used roll of scotch packing tape, a criminal record, and inaccurate paperwork all amounted to reasonable suspicion). The instant facts, viewed in light of Officer Bielecki's experience, resulted in reasonable suspicion from the standpoint of an objectively reasonable police officer.

## CONCLUSION

Based on the totality of the circumstances, this Court ruled the second interaction with Appellant to be a mere encounter, requiring no reasonable suspicion and thereby affirming the voluntary nature of Appellant's consent to search. In the alternative, if the second interaction is considered an investigatory detention, this Court found the facts yielded reasonable suspicion in any reasonable officer, such that an investigatory detention was lawful, and the resulting consent, valid.

For the foregoing reasons, we respectfully request The Superior Court affirm this Court's August 15, 2017, Order denying Appellant's Motion to Suppress.

BY THE COURT:

November 17, 2017
Date

WALLACE H. BATEMAN, JR. J.

10

*Copies to:*

Sara Webster, Esq.
87 North Broad Street
Doylestown, PA 18901
*Counsel for Appellant*


Matthew Weintraub, Esq.
Office of the District Attorney
Bucks County Justice Center
100 N. Main Street
Doylestown, PA 18901
*Counsel for Appellee*