J-A03045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| FIDEL ROMERO | : | |
| | : | |
| Appellant | : | No. 1082 EDA 2020 |

Appeal from the Judgment of Sentence Entered February 24, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001036-2017

BEFORE:     STABILE, J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                    **FILED JUNE 21, 2022**

Fidel Romero (Appellant) appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury convictions of attempted murder[1] and related offenses. He argues: (1) the trial court erred in admitting evidence of prior bad acts, under Pa.R.E. 404(b), to show motive for the instant shooting; (2) the court erred in denying his request for a **Kloiber** jury instruction;[2] (3) and the verdicts were against the

_____

[1] 18 Pa.C.S. §§ 901(a), 2502.

[2] **See Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954). "A **Kloiber** instruction informs the jury that an eyewitness identification should be viewed with caution when either the witness did not have the opportunity to view the defendant clearly, equivocated on the identification of the defendant, or had difficulties identifying the defendant on prior occasions." **Commonwealth v. Williams**, 255 A.3d 565, 577 n.15 (Pa. Super. 2021).

weight and sufficiency of the evidence, when he was never identified as the shooter. We affirm.

## I. Facts

The underlying shooting occurred on April 1, 2016, around 1:30 a.m., on Lindley Avenue, between 5th and Fairhill Streets in Philadelphia. The Commonwealth alleged that Appellant walked up to a parked, black Chrysler 300 limousine and fired a gun six times at the driver. The driver, Lisa Julia (the Victim) was not struck and was able to drive to her nearby home. The Victim had consumed beer and, as we discuss in detail *infra*, was afraid she would be charged with driving under the influence. *See* N.T. Trial, 12/12/19, at 88. She ultimately gave varying statements to police about the shooter's description, but admitted at trial these were not true. Additionally, the Victim did not identify Appellant in a photo array.

Philadelphia Police Detective Timothy Hartman obtained seven surveillance videos from nearby businesses and residences. *See* N.T. Trial, 12/13/19, at 81. He compiled them into one chronological video, which was played at trial and showed the following: At 1:17 a.m., an individual left the house at 521 Ashdale Street, which is where Appellant and his mother lived. *See id.* at 59-60. At 1:22, a vehicle parked on the north side of the 500 block of Lindley Avenue. *See id.* at 61-62. At 1:34, an individual entered 521 Ashdale Street, and exited again at 1:40. *Id.* at 62-63. This individual walked northward on 5th Street to the **southeast** corner of 5th and Lindley, where

they lit a cigarette or cigar and "[hung] around" for three minutes. *Id.* at 64, 66, 68, 85. The individual then crossed to the **southwest** corner of that intersection and walked along the south side of Lindley. *Id.* at 69. Due to "the shadows and the darkness[, it was] hard to see what happen[ed] to [the individual] for a brief period of time." *Id.* at 91. At trial, Detective Hartman described: "The individual [came] from the shadows [on] the south side and crosse[d] the street to the north side[,]" returned to the south side, and then walked to "the middle of the street." *Id.* at 70. The video then showed at least one muzzle flash near the car that was parked earlier. *Id.* The car left the parking space. Meanwhile, the individual ran off and "disappear[ed] behind [a] telephone pole," before entering 521 Ashdale. *Id.* at 71. Detective Hartman testified to his belief that when the individual entered the home, they appeared to be holding "what could be a firearm." *Id.* at 88.

On cross-examination, Detective Hartman acknowledged the image quality of the video was "not so good," such that a viewer could not "see definitely whether [the] individual [was] wearing a hat or [had] white sneakers on[.]" N.T., 12/13/19, at 94-95. When asked whether the video could be depicting "two different people," Detective Hartman conceded, "It could be." *Id.* at 96. Nevertheless, the detective disagreed with Appellant's counsel's suggestion that immediately before the shooting, there was additional "movement between" other cars. *Id.* at 93-94. Detective Hartman testified:

> . . . I watched the video from [the time] the car parked until [the shooting]. Nothing significant happens at the car. Nobody

- 3 -

appears to leave or exit the car. **I don't see anybody else in the frame.**

But like I said earlier, in all fairness, when the individual walks on the south side of the sidewalk, once he gets to the darkness and shadows, you kind of lose him. You can't see what he's doing or coming from when he comes back.

*Id.* at 97-98 (emphasis added). The individual in the video wore a sweatshirt that said, "[I]n loving memory of Goldie." *See id.* at 78.

Seven days after the shooting, the Philadelphia Police executed a search warrant at 521 Ashdale Street, where Appellant lived with his mother. In the basement, police recovered gun cleaning rods, live ammunition, a sweatshirt matching the above description, and a baseball hat. *See* Trial Ct. Op., 3/22/21, at 4-5; N.T., 12/13/19, at 18-19. The sweatshirt was tested and found to have gunshot residue on the sleeves and sides, as well as Appellant's DNA on the inside collar. Trial Ct. Op. at 6; N.T. Trial, 12/17/19, at 17.

At trial, Appellant admitted he was the person walking in the compilation surveillance video, Trial Ct. Op. at 6, but argued the shooter was another person. Appellant testified that around 1:20 or 1:30 a.m., he walked to the corner of 5th Street and Lindley Avenue to buy marijuana from someone named Rob, waited a few minutes, and smoked a cigarette. N.T., 12/18/19, at 61-62. Appellant crossed to the other side of Lindley Avenue to look for Rob, "waited another minute or two," but left when Rob did not appear. *Id.* at 64. As he was walking home, Appellant heard gunshots and "immediately ran home." *Id.* He denied carrying a firearm and stated instead that he was

holding a cell phone. Trial Ct. Op. at 6. Appellant also explained the sweatshirt he was wearing — that was later found to have gunshot residue — belonged to his cousin, who was often at their house. *See id.* at 6-7. Appellant denied knowing anything about the live ammunition and gun cleaning kit recovered from the basement. *Id.* at 7.

## II. Procedural History

Appellant was charged with attempted murder, aggravated assault,[3] and related offenses. On December 16, 2018, the Commonwealth filed a motion *in limine* to admit evidence of Appellant's prior bad acts under Pa.R.E. 404(b). The motion alleged the following: In October of 2012, almost three and a half years before the shooting in this case, Appellant attacked Adolfo Mateo,[4] who dated Appellant's mother and lived across the street from Appellant and his mother. Mateo, like the Victim, drove a black Chrysler 300 limousine and often parked in the area of 5th and Lindley.[5] Appellant's mother got into an argument with another woman Mateo was dating. Appellant approached with three men punched and kicked Mateo, breaking his ribs. Mateo reported this

---

[3] 18 Pa.C.S. § 2702.

[4] This witness is also referred to as Adolfo Mateo-Medina in the pleadings and Appellant's brief. We adopt the name, "Mateo," that is set forth in in the trial transcript for his testimony. *See* N.T. Trial, 12/16/19, at 4.

[5] The Commonwealth averred the Victim and Mateo both worked for the same limousine company, High Class Limo. Commonwealth's Motion *in Limine* at 2.

incident to the police, which resulted in Appellant being charged and held in custody. Commonwealth's Motion *in Limine*, 12/16/18, at 2. The Commonwealth argued this prior incident would show Appellant's motive to shoot the driver of a black Chrysler 300 limousine: "On April 1, 2016, [Appellant] saw his chance to get even with the man who had him locked up three-and-a-half years earlier." ***Id.*** at 4.

A brief suppression hearing was held on May 13, 2019, before the Honorable Giovanni Campbell.[6] Appellant's counsel pointed out that in 2017 — after the shooting in this case — Mateo recanted his accusation against Appellant. ***See*** N.T. 404(B) Motion, 5/13/19, at 6. Mateo told police he knew Appellant was not one of the attackers, but Appellant's cousins were, and Mateo believed that identifying Appellant would lead to the cousins. ***Id.*** The Commonwealth maintained the evidence was admissible under Rule 404(b) to show Appellant's motive to shoot the driver of a Chrysler 300 limousine — that Mateo had Appellant "locked up falsely." ***Id.*** at 7. The suppression court granted the Commonwealth's motion and permitted introduction of the evidence. ***Id.*** at 8.

The case proceeded to a jury trial, but on May 16, 2019, Judge Campbell declared a mistrial for the failure of Appellant's counsel, an assistant public

_____

[6] The suppression hearing transcript, including the cover page, spanned eight pages.

defender, to appear for trial. The court appointed Appellant's current counsel, Jules Szanto, Esquire, to represent him, and the case was reassigned to the Honorable Roxanne Covington.

A jury trial commenced on December 12, 2019. The Victim admitted that she previously gave false, inconsistent statements to the police, because she was "afraid" and "nervous" she would be "lock[ed] up for driving" under the influence. N.T., 12/12/19, at 84. Defense counsel extensively cross-examined her about these prior false statements. *Id.* at 95-120. The Victim testified she did not "get a good look" at the shooter's face and she did not identify anyone at trial as the shooter. *See id.* at 83.

Philadelphia Police Detective Brian Boos testified that he showed the Victim a photo array, which included Appellant's photograph. N.T., 12/13/19, at 11. However, the Victim did not identify anyone, including Appellant, as the shooter. *Id.*

Consistent with the trial court's Rule 404(b) ruling, Mateo testified to the following: he accused Appellant of attacking him in October of 2012. N.T., 12/16/19, at 14. However, in April of 2017, Mateo told police Appellant was not one of the attackers. *Id.* at 15-16. We note the trial court did not issue any cautionary instruction to the jury, either immediately after the evidence

was introduced, or in its full jury charge following the presentation of evidence. *See id.* at 17; N.T. Trial, 12/19/19, at 3-41.[7]

The Commonwealth also played a recording of a prison telephone call, made on June 19, 2016, two days after Appellant's arrest. *See* N.T., 12/18/19, at 34, 73. Appellant told his mother, "[M]ake sure this lady don't come to court," and "[I]f she comes to court, I'm fucked[.]"[8] *Id.* at 74, 86. When asked what he meant, Appellant responded, "I was just scared. . . . I'm being [falsely] accused of these [serious] charges."[9] *Id.* at 74-75, 86.

Appellant testified as summarized above. He acknowledged that as a result of the prior criminal charges involving Mateo, he was imprisoned for two weeks. N.T., 12/18/19, at 83. Nevertheless, Appellant denied having any "problems" with Mateo and described him as "always . . . a good neighbor."

---

[7] The transcripts dated December 19, 2019, and December 20, 2019, are identical, and it is not clear which date is correct. For citation purposes only, we use the December 19th date when referring to the transcript.

[8] While the recordings were played at trial, they were not transcribed to the trial transcript. *See* N.T., 12/18/19, at 34. However, Appellant was asked about them on both direct and cross-examination, and we glean the telephone call statements from those portions of his testimony. *See* N.T., 12/19/19, at 74-75, 85-87.

[9] The Commonwealth also played a second telephone call, made that same day. Appellant's sister asked "[W]hat is going to happen if she comes to court[.]" N.T., 12/18/19, at 75. The transcript does not indicate if or how Appellant replied, but at trial, Appellant again explained he was "surprised and shocked" by the serious charge of attempted murder against him. *Id.*

*Id.* at 71. He also denied he was the person depicted in the video shooting the Victim. *Id.* at 75.

The jury found Appellant guilty of all charges: attempted murder, aggravated assault, simple assault, recklessly endangering another person, possessing instruments of crime, firearms not to be carried without a license, and carrying firearms on public streets in Philadelphia.[10] Appellant was also found guilty of persons not to possess a firearm.[11]

The trial court conducted sentencing on February 24, 2020. Appellant made an oral motion for the court to set aside the jury's verdict, arguing there was a lack of identification evidence and, furthermore, all the evidence that was presented was circumstantial. The trial court denied this motion and imposed an aggregate sentence of eight to 16 years' imprisonment.[12]

---

[10] 18 Pa.C.S. §§ 2702(a), 2701(a), 2705, 907(a), 6106(a)(1), 6108, respectively.

[11] 18 Pa.C.S. § 6105(a)(1). While the trial court did not charge the jury with this count, the certified record does not definitively indicate that it was the court that found Appellant guilty. *See* N.T., 12/19/19, at 28-38 (jury instructions on elements of offenses).

[12] The trial court imposed: (1) eight to 16 years for attempted murder; (2) a concurrent term of five to 10 years for persons not to possess a firearm; and (3) no further penalty on the remaining counts.

Appellant did not file a post-sentence motion, but filed a timely notice of appeal. He also filed one timely Pa.R.A.P. 1925(b) statement, as directed by the trial court.[13]

### III. Statement of Questions Involved

Appellant raises four issues for this Court's review:

1. Whether the Motion Court erred in granting the Commonwealth's "Prior Bad Acts" Motion by admitting evidence of an incident nearly four years prior to the instant action, in which Appellant was misidentified as the perpetrator, and such evidence was overly prejudicial to Appellant.

2. Whether the evidence was insufficient to sustain Appellant's convictions for Attempted Murder and related firearms offense, and whether the Trial Court erred in denying Appellant's motion for judgment of acquittal.

3. Whether the weight of the evidence is against Appellant's convictions for Attempted Murder and related firearm offenses.

_____

[13] On June 9, 2020, the trial court directed Appellant to file a Rule 1925(b) statement within 21 days, or by June 30th. Appellant timely filed a statement on June 29th, which raised vague challenges to the weight and sufficiency of the evidence, the admission of the Rule 404(b) evidence, and the trial court's denial of his request for a *Kloiber* instruction. *See* Appellant's Supplemantal [sic] Statement of Errors Complained of on Appeal, 6/29/20 ("The verdict of 'guilty' was against the weight of the evidence presented at trial.").

More than seven months later, on January 19, 2021, Appellant filed a purported supplemental Rule 1925(b) statement, which raised the same issues but provided supporting explanation. However, because Appellant did not first seek leave to file this supplemental statement, it is untimely, and we do not consider it. *See Commonwealth v. Woods*, 909 A.2d 372, 378 (Pa. Super. 2006) ("[An appellant must] obtain an order granting the request for the extension before the issues raised in an untimely 1925(b) statement will be preserved for appeal to this Court.") (footnote omitted).

4, Whether the Trial Court erred in failing to include a **Kloiber** charge in the Jury instructions.

Appellant's Brief at 7.

### IV. Admission of Prior Bad Acts

Appellant first challenges the trial court's admission of the prior bad acts evidence under Pa.R.E. 404(b). "The admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion." **Commonwealth v. Gilliam**, 249 A.3d 257, 270-71 (Pa. Super. 2021) (citation omitted). "Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." **Commonwealth v. Golphin**, 161 A.3d 1009, 1021 (Pa. Super. 2017) (citation omitted).

This Court has explained:

Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as **motive**, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). . . .

To establish one of the exceptions set forth in Rule 404(b)(2), there must be "a close factual nexus sufficient to demonstrate the connective relevance of the prior bad acts to the crime in question[.]" Additionally, the term "unfair prejudice" in Rule 404(b)(2) "means a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." "[W]hen weighing the

- 11 -

potential for prejudice, a trial court may consider how a cautionary jury instruction might ameliorate the prejudicial effect of the proffered evidence."

\* \* \*

[T]he trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

***Gilliam***, 249 A.3d at 271-72 (emphasis added and citations omitted).

Appellant argues the suppression court abused its discretion in admitting the Rule 404(b) evidence of prior bad acts. In support, he presents the following arguments. The October 2012 assault on Mateo was too remote in time to establish motive for the April 2016 shooting. ***See*** Appellant's Brief at 27. The probative value of the evidence was far outweighed by its prejudice to Appellant. Additionally, there is no record of the suppression court's "deliberation on the matter, or [its] findings as to the prejudicial effect on Appellant," and the court "granted the Commonwealth's motion without limitation or explanation." ***Id.*** Finally, "[m]ost egregious[ly]," the Commonwealth lacked candor in filing its motion *in limine* despite knowing Mateo had informed police that Appellant was not one of his assailants. ***Id.*** We decline to find an abuse of discretion.

- 12 -

We first address Appellant's argument that the suppression court, Judge Campbell, made no record of its findings. *See* Pa.R.Crim.P. 581(I) (court shall enter, on the record at the conclusion of a suppression hearing, "a statement of findings of fact and conclusions of law as to whether the evidence was obtained in violation of the defendant's rights . . ."). As stated above, the hearing was relatively brief. The only statements made by court at the suppression hearing were a question to the Commonwealth, "Is the Commonwealth alleging that [Mateo] was targeted?," and its ruling, "All right, thank you. The 404(b) motion is granted." N.T., 5/13/19, at 4, 8.

However, the Commonwealth's sole argument, in both its written motion and at the hearing, was that the evidence was admissible under Rule 404(b) to show Appellant's motive: to avenge Mateo for falsely accusing him of assault, which led to criminal charges and imprisonment. The Commonwealth explained that both Mateo and the Victim drove black Chrysler 300 limousines and parked them in the neighborhood around 5th Street and Lindley Avenue. N.T., 5/13/19, at 4. While we agree the suppression court did not state findings of fact on the record, we conclude that, under the particular circumstances of this case, we may glean the court's reasoning from the context of the parties' arguments and the court's confirmation of the Commonwealth's claim — that Mateo "was targeted[.]" *See id.*. The court permitted the evidence on the only ground requested by the Commonwealth — to show motive for shooting at the driver of a black Chrysler

300 limousine parked in his immediate neighborhood. Furthermore, Judge Covington's Rule 1925(a) opinion provided reasons why this Court should affirm. Thus, the suppression court's lack of a more formal or complete statement is not fatal to our review. *See also Commonwealth v. Reppert*, 814 A.2d 1196, 1200, 1202 (Pa. Super. 2002) (*en banc*) (although trial court did not state findings of fact on the record at suppression hearing, this Court could review trial court's Rule 1925(a) opinion's discussion of suppression issue, and thus we reached merits of the defendant's suppression challenge, based "[u]pon consideration of [the] circumstances as documented in the record of the suppression hearing").

On the merits of Appellant's claim, we find no abuse of discretion. The trial court reasoned: "Here, the prior bad acts were admissible to show motive. The evidence revealed why Appellant harbored ill will towards the driver of a black limousine, which was the same make and model as the one into which Appellant fired six gunshots." Trial Ct. Op. at 13. The trial court further reasoned Appellant was not unduly prejudiced, as a "trial court is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration[.]" *Id.*, citing *Commonwealth v. Hairston*, 84 A.3d 657, 666 (Pa. 2014). We agree. *See* Pa.R.E. 404(b)(2) (evidence of prior bad acts or unrelated criminal activity may be admissible to prove motive). The suppression court's ruling is not manifestly unreasonable and does not indicate any partiality, prejudice, bias or ill will. *See Golphin*, 161 A.3d at 1021.

We further agree with the trial court that even if the suppression court erred, such error was harmless. As the trial court pointed out, Mateo clearly testified that he knew Appellant was **not** one of his assailants, but nevertheless told police he was, under the belief that it would lead to identification of the true assailants. *See* N.T., 12/16/19, at 14. Defense counsel cross-examined Mateo on this false allegation against Appellant. Meanwhile, Appellant testified that despite the criminal charges and imprisonment, he harbored no ill will against Mateo. N.T., 12/18/19, at 82, 85. The jury was free to weigh all of this testimony, and believe all, part, or none of this evidence. *See Commonwealth v. Williams*, 255 A.3d 565, 580 (Pa. Super. 2021) (citation omitted).

Additionally, "Appellant's convictions were supported by abundant evidence," where he admitted he was the person walking in the surveillance video. *See* Trial Ct. Op. at 13-14. His theory, that there was another person in the video who committed the shooting, was introduced during his cross-examination of Detective Hartman. However, while the detective testified it is not clear what the individual did when he disappeared in the "shadows," the detective stated he did not see anyone else "in the frame." *See* N.T., 12/13/19, at 97-98. Moreover, the video was played for the jury, which could make its own findings as to whether another person was present during the shooting. For the foregoing reasons, no relief is due.

## V. Weight & Sufficiency of Identification Evidence

Next, Appellant asserts the evidence was insufficient to sustain his convictions beyond a reasonable doubt, where he "was never identified as the shooter." Appellant's Brief at 27. He then "incorporates [his] sufficiency argument" to also aver the verdict was against the weight of the evidence. *Id.* at 32.

We first remind counsel that "[a] challenge to the weight of the evidence is distinct from a challenge to the sufficiency of the evidence[. T]he former concedes that the Commonwealth has produced sufficient evidence of each element of the crime, but questions which evidence is to be believed." *See Commonwealth v. Kinney*, 157 A.3d 968, 971 (Pa. Super. 2017) (citation omitted). A claim —

> that the evidence was insufficient because [the defendant] was wrongly identified as the perpetrator of the crimes based on "unbelievable identification testimony" of the victim [—] goes to the credibility of the witness's testimony, and is, therefore, not an attack on the sufficiency of the evidence, but an allegation regarding the weight it should have been afforded.

*Commonwealth v. Griffin*, 65 A.3d 932, 939 (Pa. Super. 2013). *See also Kinney*, 157 A.3d at 971 (claim challenging "any indefiniteness and uncertainty in . . . identification testimony goes to its weight") (citation

- 16 -

omitted).  Accordingly, we construe Appellant's argument to be a challenge to

the weight, not sufficiency, of the evidence.[14]

We note the relevant standard of review:

The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses.  A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses.  Rather, the role of the trial judge is to determine that notwithstanding all the fact, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience.  Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

**Williams**, 255 A.3d at 580 (citation omitted & paragraph break added).

In support of his claim that there was no evidence identifying him as the

shooter, Appellant presents numerous arguments, which we address *seriatim*.

First, he emphasizes the Victim did not identify him in a photo array.

Appellant's Brief at 30.  The compilation surveillance video "was too unclear

to get a clear image of the shooter."  ***Id.***  Detective Hartman acknowledged

_____

[14] Appellant has preserved this weight claim by raising it in an oral motion at the sentencing hearing.  **See** Pa.R.Crim.P. 607(A)(1) ("A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial[,]" *inter alia*, "orally, on the record, at any time before sentencing[.]").

that "when the individual walks on the south side of the sidewalk, once he gets to the darkness and shadows, . . . [y]ou can't see what he's doing[.]" *Id.* (citation omitted). Although Appellant was the person "walking around the block and smoking a cigarette," Detective Hartman conceded that another person could have been the shooter. *Id.* at 30-31. "[T]here was no evidence that Appellant carried a firearm" that night, and no firearm was recovered. *Id.* at 31, 33. His hat and sneakers were not tested for gunshot residue, but if they had, the absence of gunshot residue "would surely [have] exonerate[d] him." *Id.* at 31. Appellant concludes that the Commonwealth only established his presence in the general area of a shooting, and the jury's verdict shocks one's sense of justice. *Id.* at 31-32. We disagree.

All of Appellant's points above — including the Victim's lack of identification and the quality of the video — were presented to the jury, which was free to evaluate the weight to be given to the evidence. *See Williams*, 255 A.3d at 580. Importantly, while Appellant conceded he was the person seen walking in the video, his defense theory was that someone else shot at the Victim. On cross-examination of Detective Hartman, Appellant's counsel pointed out where there could have been additional "movement between . . . cars[.]" N.T., 12/13/19, at 93-94. The jury was free to weigh the detective's response that he did not see "movement," *id.* at 94, and furthermore free to determine from its own viewing of the video whether there was any second person.

Additionally, we agree with the trial court's analysis of Appellant's weight challenge:

> The jury heard testimony from numerous witnesses, including the [V]ictim, about the shooting. The jury also received expert testimony regarding the ballistics evidence — gun powder residue on the sweatshirt, which Appellant admitted he wore on the night of the shooting. Finally, the jury received Appellant's testimony wherein he acknowledged that he was the person in the surveillance video, which the jury viewed. He also explained why, on a phone call from jail, he told someone that if the [V]ictim testifies at the trial, Appellant is "fucked." However, the jury rejected Appellant's self-serving testimony as lacking credibility.
>
> The jury assessed each witness's credibility. In evaluating the testimony and evidence utilized to identify the shooter, the jury had the full opportunity to assess each witness and then make relevant factual determinations. Thus, the jury's verdict was not "so contrary to the evidence as to shock one's sense of justice."

*See* Trial Ct. Op. at 8-9. We find no abuse of discretion on the trial court's part in denying Appellant's oral challenge to the weight of the evidence. *See* ***Williams***, 255 A.3d at 580.

We briefly address Appellant's remaining arguments. He also avers, "The Commonwealth's entire case was based on manipulated video and incomplete forensic analysis." Appellant's Brief at 30. He maintains the Commonwealth presented the compilation video "through a lay witness, rather than an expert." ***Id.*** Appellant also complains that while Detective Hartman testified that the time stamps on the surveillance videos were not entirely accurate, but rather "off[ ]" by a couple minutes, he did not explain "how one balances the allegedly inaccurate time against the Naval Observatory time." ***Id.***

- 19 -

Appellant's arguments go to the admission of the compilation video, not the weight of the evidence supporting the jury's verdict. In any event, they are waived for our review for failure to raise any objection at trial. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Baker*, 24 A.3d 1006, 1034 (Pa. Super. 2011) (where defendant failed to object to admission of evidence before the trial court, they cannot raise that issue on appeal).

Appellant also contends "the Police conducted an incomplete investigation[, as] they never spoke with another obvious suspect, Niko McBride." Appellant's Brief at 29. The Victim's initial description of the perpetrator — even though it was "made up" — "was so specific and distinct that that an officer had a clear image of a person who fit that description and lived within a couple blocks of the shooting." *Id.* at 29-30.

At this juncture, we summarize that on the night of the shooting, the Victim described the perpetrator to a police officer. Trial Ct. Op. at 4. Based on this description, the officer "showed her a prison release photo of" Niko McBride, and the Victim said, "[T]hat's him 100%." *See id.*, *citing* N.T., 12/12/19, at 126. "Later that night, the [officer] learned he 'wasn't supposed to do that.'" Trial Ct. Op. at 4 (citation omitted). However, the Victim later recanted this description and identification. At trial, when

> asked why she made an identification, though she did not see the shooter's face[, t]he [V]ictim testified that she was afraid because she had been drinking and was worried the officers would arrest her for drinking and driving.

*Id.* at 3-4.

Appellant acknowledges the Victim admitted she made up the description, which led to the police officer showing her a photograph of Niko McBride. He offers no explanation why, despite McBride's possible resemblance to this concocted description, McBride would be an "obvious suspect," nor how he would be relevant to this investigation. **See** Appellant's Brief at 29. Accordingly, this argument is meritless.

Finally, Appellant claims the Victim described the shooter as wearing a gray sweatshirt, and police recovered a gray sweatshirt, which she identified as well. Appellant's Brief at 30. Appellant mentions this sweatshirt "was left [on the street] two hours **before** the shooting," but points out "it was never tested for DNA [or] gunshot residue[.]" *Id.* (emphasis added).

At trial, Detective Hartman explained that a sweatshirt was recovered from 5th and Ruscomb Street, near the shooting. **See** N.T., 12/13/19, at 48. The detective reviewed the surveillance videos, and determined the sweatshirt was left there approximately two hours **before** the shooting. *Id.* at 51. He determined the sweatshirt "had nothing to do with the shooting . . . and it stayed there until the police recovered it." *Id.* at 53. Appellant ignores this testimony and offers no argument why the sweatshirt — which he acknowledges was discarded two hours before the shooting — would be relevant to this investigation. We conclude no relief is due.

## VI. *Kloiber* Jury Instruction on Identification

In his last issue, Appellant alleges the trial court erred in denying his request for a *Kloiber* jury instruction. Such a jury charge informs the jury that an eyewitness identification should be viewed with caution when the witness did not have the opportunity to view the defendant clearly, equivocated on the identification, or previously had difficulties identifying the defendant. Appellant's Brief at 33, *citing* **Williams**, 255 A.3d at 577 n.15. Appellant concedes he did not object after the jury charge, but contends his pre-jury instruction "was thorough and robust enough [to] be functionally equivalent to an objection, and therefore the issue should not be deemed waived." Appellant's Brief at 34. We disagree.

This Court has explained:

> [I]n order to preserve a claim that a jury instruction was erroneously [omitted], the [a]ppellant must have objected to the charge at trial. Pa.R.A.P. 302(b) (. . . "[A] general exception to the charge to the jury will not preserve an issue for appeal. Specific exception shall be taken to the language or omission complained of."); Pa.R.Crim.P. 647(B) (. . . "[N]o portions of the charge nor omissions from the charge may be assigned as error, **unless specific objections are made thereto before the jury retires to deliberate**.") . . .

**Williams**, 255 A.3d at 577 (citation omitted and emphasis added).

Following the Commonwealth's case in chief, Appellant requested a *Kloiber* charge. **See** N.T., 12/18/19, at 44-49. Following both parties' arguments, the trial court denied the request. **Id.** at 52. Appellant raised no objections after the court's jury instructions. **See id.** at 41. Because he did

not raise this claim again before the jury retired to deliberate, it is waived for our review. *See* Pa.R.A.P. 302(b); *Williams*, 255 A.3d at 577.

In any event, even if the issue were preserved, we would conclude no relief is due. In *Williams*, the defendant acknowledged that none of the witnesses at trial identified him as the shooter. *Williams*, 255 A.3d at 578 n.16.

> Because the witnesses provided no in-court identification of [the defendant] as the shooter, a *Kloiber* instruction was not warranted. *See* [*Commonwealth v. Sanders*, 42 A.3d 325, 335 (Pa. Super. 2012)] (. . . a *Kloiber* instruction is not necessary where the witness declines to identify the defendant in court). . . .

*Id.* Similarly, at trial, no witness definitively identified Appellant as the shooter.[15] Thus, we would agree with the trial court that *Kloiber* was not applicable at this trial.

## VII. Conclusion

Having concluded no relief is due on any of Appellant's issues, we affirm the judgment of sentence.

Judgment of sentence affirmed.

---

[15] At trial, Appellant conceded the Victim did not identify him, but argued Detective Hartman did identify him as the individual in the surveillance video. N.T., 12/18/19, at 48-49. The Commonwealth responded that although the detective "insinuate[d]" Appellant was the person in the video, such an insinuation "is not an identification." *Id.* at 50.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>6/21/2022</u>